In the Matter of LOUIS H. SCHLEIDER, an Attorney, Respondent.

First Department, February 14, 1930.

*Isidor J. Kresel* of counsel [*Bernard Hershkopf* and *Cornelius P. Cotter* with him on the brief], for the petitioners.

*George Gordon Battle*, for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a

term of the Appellate Division of the Supreme Court of the State of New York, First Department, on December 14, 1908.

The petition charges that the respondent has been guilty of misconduct as an attorney at law in soliciting retainers in personal injury actions; the employment of persons, not members of the bar, to solicit such retainers for a compensation, and the promising and giving of valuable consideration for inducing retainers in personal injury cases. The petition sets out six specific instances of solicitation. In addition, it is charged that respondent converted to his own use part of the money received in settlement of an infant's claim, through his failure to comply with the order of compromise, retaining more than the amount fixed as his fee.

Respondent's answer put these charges in issue and the matter was referred to a referee to take testimony in regard to said charges and report the same with his opinion thereon to this court. The referee having duly reported, the petitioners move for such action in the matter as this court may deem just and proper.

After respondent's admission to the bar in December, 1908, he joined his brother, Moses M. Schleider, in the practice of law, and remained with him until some time in 1917. The firm name was Schleider & Schleider. From 1917 to the present time respondent has been engaged on his own account in the practice of law with offices at 51 Chambers street, in the borough of Manhattan. Respondent's testimony in the investigation before Mr. Justice WASSERVOGEL proves that while he was a member of the firm of Schleider & Schleider that firm engaged in the solicitation of retainers in personal injury cases. The suggestion is that respondent's brother was the dominant member of that firm. By order of this court dated the 10th day of January, 1930, Moses M. Schleider was suspended for one year from the practice of law as the result of charges of solicitation growing out of the ambulance chasing investigation.

The referee has found that the charges so far as they involve solicitation of the case of Amelia Ambrose have not been sustained. Mrs. Ambrose testified that she was injured in September, 1925; that the day after the accident respondent came to see her, and told her that he had obtained news of the accident from a doctor. She testified that respondent was a stranger to her before that time. She retained respondent on a fifty per cent basis. It appears that Mrs. Ambrose subsequently took the matter away from respondent because she did not hear from him for a long time. Speaking of the Ambrose case, the referee, in his report, states: " There seems to be a hostile animus in her case against the respondent and I do not accept her statements as true."

The referee has found that the charges of solicitation have been sustained in the Allen, Prestigiacomo, Resnick, Ducz and Pihill cases. The referee states, after considering the testimony, "Either these cases * * * came to the respondent through the activities of some unknown benefactor happily provided with newspaper clippings as to respondent's professional abilities and with printed retainers running to him as attorney, or these injured persons were solicited on behalf of respondent by some employee or employees of his engaged and paid for that purpose. It seems to me that the only fair and reasonable conclusion to make on the facts proved, is the latter conclusion." A reading of the record satisfies us that in those instances there was that seeking out of people with claims for personal injuries that is condemned by the Canons of Ethics. For example, in the Allen case the testimony by Samuel Allen is that his son, John, was struck by an automobile, necessitating his remaining in the hospital fourteen days; several lawyers approached the father and he told them he would think matters over because the child was not in a condition at the time for him to put it in the hands of any lawyer. Then, Allen testified, in the evening of the day following the accident, "the next gentleman came to me and told me that he knowed of a reliable lawyer and he speaks very definite to me and he said he would call him and let his representative come to me, and he did so. * * * And he called the lawyer's representative and he came and he showed me newspapers cut out with Louis H. Schleider's name of cases he won, and he speaks as though — that I can trust him to put the business in his hands." Allen signed a paper for this representative, and retained respondent. Allen testified that he did not know respondent at that time. The testimony in the other named cases is along the same lines. Guiseppi Prestigiacomo testified that following his accident, a man, a stranger, came to his house and said he had a good lawyer for him regarding the case; respondent was retained. Jennie Resnick testified that after her accident a perfect stranger came to her house, asked if she had a lawyer, showed her a lot of newspaper clippings and convinced her that respondent was a very good lawyer, with the result that she retained respondent. Thomas Ducz testified that the day following his accident, when he came home from the doctor's office, there was a stranger waiting for him in his home: " So then I say, ' who is you, are you a doctor? ' He say, ' No, I am just as good like a doctor.' I say, ' what do you mean? ' He say, ' Well, I am a lawyer.' I say, ' Well, who sent you here? ' He said, ' Well, we got you yesterday since you been hurt? ' I said, ' Where you got me? ' He said, ' We got it on the police station, at the same time in the

Fordham Hospital.' ' Now,' he said, ' Well now you got bad hurt, you got eight stitches in your head.' I said, ' I don't know, you can see it I got plenty.' He said, ' Well, that case is worth money. You want to give it to me? ' I say, ' Well, I am not in a hurry with the case now. In a couple of days maybe somebody come around.' " He .did give the case to this man and retained respondent. John Pihill's testimony is along the same lines. He was injured and a stranger came asking for the case, as a result of which the respondent was retained.

Respondent claims that the Allen case came to him through some client who volunteered to recommend him. As to the other cases, he has no recollection as to how they came to him.

These cases in which solicitation was established developed since respondent commenced to practice on his own account.

On the charge of conversion, the record shows that in the Allen case (one of those in which solicitation was proved), the order of compromise recites that the boy's case was settled for $500, of which the attorney (respondent) was to receive $166.67. The guardian should have received $333.33. The parent's case was settled for $250. Respondent's retainer provided for a forty per cent fee. The parent, therefore, should have received $150, which, with the $333.33 for the infant, made a total of $483.33 to be turned over to the parent and guardian. Allen testified that he received $455 only, which is $28.33 less than the amount provided for.

Respondent testified before Mr. Justice WASSERVOGEL that there was a bond premium of about fifteen dollars, and " Then there was some certifications and otherwise that might have been two or three dollars, and otherwise I can't recall." Before the referee his testimony is to the effect that the premium on the bond was ten dollars; certificate of the bond two dollars; brain specialist ten dollars or fifteen dollars, and expenses for witnesses and examination of hospital records. Respondent contends that the allowance named in the compromise order is for services only, and did not cover disbursements, and, therefore, he was justified in deducting these disbursements. He could offer no proof by way of office records as to these disbursements. The present contention as to his right to retain the sum in question for disbursements is not quite consistent with testimony given by him before Mr. Justice WASSERVOGEL to the effect that the expenses of the litigation came out of his share.

Referring to this charge of conversion, the referee said: " Nothing is said in the order about. disbursements. Payment of $10 for the bond was made subsequent to the order. The father of the

infant testified that of the $455 which he received from Mr. Schleider as his and the infant's share in the settlement of both cases, he deposited for the infant in a bank the sum of $325. The respondent testified that he paid $10 out of $333.33, the amount payable to the infant under Judge Bijur's order, and that $325 was deposited by the father under his instructions in this bank for the benefit of the infant. This payment of $10 as a premium on the bond was, of course, proper and necessary. The infant in fact received $2.00 more than the proper amount remaining after this bond had been paid. So far as the infant is concerned, there is no proof of any misconduct by the respondent. While I do not consider that the question of the amount of the disbursements properly chargeable to the father and properly to be deducted from his share of the settlement of his case for $250 is before me, it is only fair to state that the respondent has given evidence, which, taken in connection with the evidence of his general probity and fair dealing in professional matters, convinces me that notwithstanding the lack of proper office records, no just claim can be made of any misappropriation or conversion in any aspect of this transaction. Considerable evidence was given touching the details of disbursements incurred in these cases. I will not attempt to review this testimony, but simply state my conclusion which is that I do not find this charge has been sustained."

In view of the fact that the allowance to respondent in the compromise order in the infant's action was for services, and no mention was made of disbursements, we agree with the referee in the conclusion reached by him.

The charges of solicitation herein relate to respondent's conduct some years ago. There is no proof of solicitation within the past two and a half years. Speaking of respondent's present practice, the referee said: "By slow degrees the respondent has built up a counsel practice under which he receives retainers from other lawyers who refer such cases to him and depend upon his skill and professional abilities for such success in these cases." Lawyers of standing in the profession have appeared and testified to their retaining respondent as counsel. We think the interests of justice will be served if respondent is suspended for a period of one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, FINCH, MCAVOY and PROSKAUER, JJ., concur.

Respondent suspended for one year.